IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PRESCOTT H.[1]**, <br><br> Plaintiff, <br><br> v. <br><br> **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 6:20-cv-2218-SI <br><br> **OPINION AND ORDER** |

Mark A. Manning, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette Street, Eugene, OR 97401; and Alan Stuart Graf, ALAN STUART GRAF PC, 208 Pine Street, Floyd, VA 24091. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Joseph John Langkamer, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiff Prescott H. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Supplemental Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for SSI on May 2, 2018, alleging disability beginning on January 1, 1998. AR 74. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 100, 108, 117. Plaintiff then amended his alleged onset date to August 15, 2017. AR 194. Plaintiff's date of birth is February 17, 1986, and he was 31 years old as of the alleged disability onset date. AR 69. Plaintiff appeared for a hearing before an ALJ in August 2020. AR 39. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-25. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

PAGE 4 – OPINION AND ORDER

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2017. AR 18. At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of cervical degenerative disc disease, neurodevelopmental disorder, carpal tunnel syndrome, attention deficit hyperactivity disorder (ADHD), and posttraumatic stress disorder (PTSD). *Id.* three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ladders, ropes, and scaffolds. The claimant can occasionally stoop and crawl. The claimant can frequently, but not constantly, reach overhead bilaterally. The claimant can frequently, but not constantly, handle, finger, and feel bilaterally. The claimant can perform simple, routine tasks that can be learned in 30 days or less, and consistent with a reasoning level of 1 or 2. The claimant can tolerate occasional contact with coworkers, supervisors, and the general public.

PAGE 5 – OPINION AND ORDER

AR 20. At step four, the ALJ concluded Plaintiff has no past relevant work. AR 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. *Id.* The ALJ thus concluded that Plaintiff was not disabled. AR 25.

## DISCUSSION

Plaintiff argues the ALJ erred by discounting his symptom testimony, discounting Dr. Kris Hallenburg's medical opinion, and failing to develop the record related to Plaintiff's mental limitations. The Court addresses each argument in turn.

### A. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1. Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ found that Plaintiff's physical symptoms had improved with treatment and therefore undercut his testimony of disabling pain in his neck and left hand. Plaintiff testified that he cannot turn his head left or right with a normal range of motion and that because of his neck pain, he cannot sleep for more than two to three consecutive hours throughout the night. AR 53. Plaintiff also testified that his "neck just hurts all the time." *Id.* The treatment notes identified by the ALJ that purportedly show improvement with treatment in fact show that Plaintiff continues to experience severe pain in his neck. In January 2019, Plaintiff reported that gabapentin and meloxicam were helping but that "he has severe enough pain on a daily basis that he becomes lightheaded, nauseated and occasionally vomits." AR 339. In March 2019, Plaintiff reported that gabapentin eased his pain throughout the day but that he still experiences "ongoing pain, . . . to

the point he becomes dizzy and experiences waves of nausea." AR 333. In April 2020, Plaintiff reported that his pain and sleep patterns had improved but that he still rated his pain at seven out of ten, with ten being the worst pain. AR 485. Although Plaintiff's prescribed medication may have moderately or slightly decreased Plaintiff's neck pain, the record does not show that Plaintiff's impairments related to his neck were effectively controlled with medication. Thus, improvement with treatment was not a clear and convincing reason supported by substantial evidence to discount Plaintiff's testimony.

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ found that the objective medical evidence conflicted with Plaintiff's testimony related to his mental health. Plaintiff testified that he has trouble getting along with "everybody," gets angry easily, has "assaulted people" and "gone to jail for it." AR 51, 70. The ALJ identified several treatment notes from a non-residential substance abuse treatment program he attended documenting that Plaintiff was engaged, attentive, and friendly with a pleasant mood. *See, e.g.*, AR 357, 369, 401, 404, 406. Other treatment notes indicate, however, that in February 2019, Plaintiff had an angry outburst when attempting to attend a therapy appointment for the substance abuse treatment program. *See* AR 373-75. Plaintiff told the staff at the clinic that if he

PAGE 9 – OPINION AND ORDER

did not talk to someone that day, he was "going to punch someone in the face." AR 374. The staff informed Plaintiff that they had no available appointments, and Plaintiff stormed out while using profanity and stating that he was "going to punch somebody in the face." *Id.* He then attempted to re-enter the building but was prohibited from doing so by a security guard. AR 375. After this incident with the security guard, Plaintiff called the clinic and called the security guard "several inappropriate names" and again stated that he would punch someone if he could not get an appointment. *Id.* Thus, even though Plaintiff on some occasions maintained a normal mood, considering Plaintiff's outburst at the substance abuse mental health clinic, the record does not conflict with Plaintiff's statement that he has trouble getting along with others.

Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony, the Court must determine whether that error was harmless.

### 3. Harmless Error

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a

> consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

Plaintiff's testimony reveals greater limitations than included in Plaintiff's RFC. Plaintiff testified that he has lost all sensation in his left hand due to carpal tunnel. AR 52-53. Plaintiff testified that because he cannot feel in his left hand, he accidentally hit his hand through a windowpane and breaking the glass when trying to open a window that had been stuck shut. AR 55-56. Plaintiff testified that he had not felt the shards of glass that cut into his hand and ultimately required nine stitches. AR 56. This testimony related to Plaintiff's left hand is not incorporated into Plaintiff's RFC. The RFC provides that Plaintiff can "frequently, but not constantly, handle, finger, and feel" in both hands. AR 20. Though Plaintiff may be able to handle, finger, and feel in his right hand, he cannot do so in his left hand. Further, the Vocation Expert (VE) testified that if Plaintiff were limited to occasional handling and fingering, the number of jobs available to him would be severely limited in combination with his social restrictions. *See* AR 64-65. Thus, the ALJ committed harmful error by discounting Plaintiff's symptom testimony.

**B. Dr. Kris Hallenburg's Medical Opinion**

Plaintiff filed his application for benefits on May 2, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

The ALJ rejected Dr. Hellenburg's opinion in part because it failed to provide specific limitations regarding Plaintiff's ability to engage with others, maintain regular attendance, and deal with stress in the workplace. Dr. Hellenburg opined that Plaintiff "may have trouble" maintaining regular attendance and that he would "most definitely have trouble" dealing with stress in the workplace. AR 313. Dr. Hellenburg also opined that Plaintiff "would have difficulty" engaging with coworkers and the public but did not specify to what degree Plaintiff would be able to tolerate that interaction. AR 312-13. Accordingly, the ALJ limited Plaintiff to occasional contact with coworkers, supervisors, and the public. *See* AR 20, 23. The ALJ's interpretation of Dr. Hellenburg's opinion as failing to provide specific limitations as to stress, attendance, and the degree he has trouble interacting with others is rational and therefore must be upheld. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ also found Dr. Hellenburg's opinion not persuasive because it conflicted with other evidence in the record. Dr. Hellenburg opined that Plaintiff's intellectual functioning may

impair his ability to perform detailed and complex tasks, and in his examination notes, Dr. Hellenburg stated that Plaintiff demonstrated poor memory recall, poor judgment, frustration when asked to spell words backwards, and poor concentration. AR 311-13. Dr. Hellenburg also noted, however, that Plaintiff admitted to using marijuana that day, before his evaluation. AR 311. Other evidence in the record shows that Plaintiff demonstrated well-organized thoughts, reasonable insight and judgment, and good memory recall. *See, e.g.*, AR 334, 428, 431, 480, 483, 485. Thus, considering Plaintiff's marijuana use directly before his assessment with Dr. Hellenburg and the other evidence in the record demonstrating Plaintiff's good memory recall, insight, judgment, and thought process, the ALJ rationally concluded that Dr. Hellenburg's opinion was inconsistent with the record. *See Burch*, 400 F.3d at 679. The ALJ therefore did not err in rejecting Dr. Hellenburg's opinion.

### C.  Duty to Develop the Record

Although the plaintiff is ultimately responsible for providing sufficient medical evidence of a disabling impairment, "the ALJ has a special duty to develop the record fully and fairly and ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). This duty applies even when a plaintiff is represented by an attorney. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record is triggered when the record is ambiguous or inadequate. *McLeod*, 640 F.3d at 885. The ALJ may develop the record by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues that the Dr. Hellenburg's opinion created an ambiguity in the record because Dr. Hellenburg opined that Plaintiff "has multiple mental health issues and would require a more extensive assessment to adequately define them," would benefit from a "thorough

mental health assessment," and that Dr. Hellenburg would need more information about Plaintiff's history to distinguish between Plaintiff's diagnoses of bipolar disorder, impulsivity, oppositionalism, and PTSD. AR 312-13. The Court agrees that there was ambiguity in the record as to Plaintiff's impairments related to his mental health. Dr. Hellenburg did diagnose Plaintiff with bipolar disorder, impulsivity, oppositionalism, and PTSD, among other impairments, but qualified his opinion as to the extent of Plaintiff's limitations. *See* AR 313. As explained above, Dr. Hellenburg failed to include specific limitations regarding Plaintiff's ability to interact with others, maintain attendance, and deal with stress in the workplace. This is likely because, as Dr. Hellenburg noted, adequately defining Plaintiff's mental health issues "would require a more extensive assessment." AR 312.

The Court finds there is ambiguity in the record as to Plaintiff's mental health condition particularly because no other medical provider conducted a full assessment of Plaintiff's mental impairments. Dr. Andrew Murison, who prescribed Plaintiff's pain medication and medication related to his mental health issues (*see* AR 54), stated that he had only seen Plaintiff three times and that he did not have enough information to determine Plaintiff's work-related mental limitations. AR 547-48. Other medical records simply state that Plaintiff has depression and experiences anxiety and aggravation but do not offer a comprehensive analysis of Plaintiff's mental state. *See* AR 430, 498.

The Court cannot conclude that this failure to develop the record related to Plaintiff's mental health was harmless. Further evaluation of Plaintiff may reveal mental and social limitations greater than those included in Plaintiff's RFC, and based on the testimony from the VE, any limitations greater than Plaintiff's RFC may dramatically lower the number of jobs available to Plaintiff. *See* AR 65. Thus, the Court remands for further proceedings to determine

the extent of Plaintiff's mental and social limitations and to properly incorporate the limitations related to Plaintiff's left hand into his RFC.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 28th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge